UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EDWARD W. GARDNER and LYNNE C.
GARDNER,

        **Plaintiffs,**

 vs.            1:10-cv-48
                (MAD/RFT)
TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

        **Defendant.**
_____

**APPEARANCES:**         **OF COUNSEL:**

**OFFICE OF PHIL A. RODRIGUEZ**  **PHIL A. RODRIGUEZ, ESQ.**
224 State Street
Schenectady, New York 12305
Attorneys for plaintiffs

**KENNEY, SHELTON, LIPTAK &**  **JESSE J. COOKE, ESQ.**
**NOWAK, LLP**         **JUDITH TREGER SHELTON, ESQ.**
14 Lafayette Square       **ROBERT A. CRAWFORD, ESQ.**
Suite 510
Buffalo, New York 14203
Attorneys for defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

  On June 24, 2010, plaintiffs filed the present action against defendant[1] seeking, among other things, a declaration that defendant must defend and indemnify plaintiffs in *Susan M.*

---

[1] Although plaintiffs brought suit against Travelers Property Casualty Company of America ("Travelers"), the insurance policy at issue was actually issued by Farmington Casualty Company, a wholly owned subsidiary of Travelers.

*Brewer v. Edward W. Gardner, Lynne C. Gardner and Alderbrook Lodge*, filed in New York State Supreme Court, Warren County (the "underlying action").

Currently before the Court is defendant's motion for summary judgment seeking the following relief: (1) a declaration that defendant is not obligated to defend or indemnify plaintiffs in the underlying action because the plaintiff's injury in the underlying action occurred on a rental property that is excluded from coverage under the policy; and (2) a declaration rescinding the policy *ab initio* based upon plaintiffs' material misrepresentations in the application for insurance. *See* Dkt. No. 14-4 at 5-12.[2]

## II. BACKGROUND

In 2001, plaintiffs acquired the Alderbrook Lodge at 275 Hendricks Road, Bolton Landing, and the "A-frame guest Chalet" at 272 Hendricks Road, Bolton Landing. *See* Dkt. No. 18-1 at 2. In September of 2008, plaintiff Edward Gardner completed a Homeowner Application seeking insurance coverage for his property. Defendant issued a Homeowner Policy, Policy No. 983707362-633-1, for the period from September 15, 2008 to September 15, 2009 (the "Policy"). *See* Dkt. No. 18-2 at ¶ 8 (citing Exhibit "A"). The Policy provided that the "Location of Residence Premises" was 272 Hendricks Road (the A-frame guest Chalet), and that the sections entitled "Personal Liability" and "Medical Payments to Others" were extended to include the property at 275 Hendricks Road (the Alderbrook Lodge), subject to certain exceptions. *See id.* at ¶ 7; *see also* Dkt. No. 14-3 at ¶ 14 and Exhibits "D-E." On the Homeowner Application, plaintiffs

---

[2] On June 27, 2011, the Court heard oral argument in favor of, and in opposition to, this motion.

indicated that the Alderbrook Lodge was owner occupied, but also provided that it "rents out occasionally." *See* Dkt. No. 14-10.

Plaintiffs marketed the Alderbrook Lodge for rental 365 days per year. *See* Dkt. No. 14-3 at ¶ 15 (citing Exhibit "I"). The "A-frame" was also listed on plaintiffs' website as available for rental, but it was not rented as frequently as the Alderbrook Lodge. *See* Dkt. No. 14-14; *see also* Dkt. No. 18-2 at ¶ 9. The Alderbrook Lodge was actually rented numerous times, comprising in excess of 323 rental days and generated revenues in excess of $200,000. *See* Dkt. No. 14-3 at ¶¶ 16-17 (citing Exhibit "I"). In fact, in 2008, plaintiffs rental income totaled $42,550, with $34,300 of it being earned before September. *See* Dkt. No. 14-14 at 51.

On December 26, 2008, Susan Brewer, a guest who was visiting a friend who was staying at the Alderbrook Lodge, fell somewhere on one of plaintiffs' properties. "The premises at 275 Hendricks Road was leased to John Lemp from 12/20/08 to 12/29/08 with the occupancy of 272 available for additional people if necessary." *See* Dkt. No. 18-3 at ¶ 13. Plaintiffs contend that Ms. Brewer "fell on the entrance walking to the premises of 272 Hendricks Road[.]" *See id.* at ¶ 14. Plaintiffs contend that Ms. Brewer was a guest at 272 Hendricks Road, not the Alderbrook Lodge. *See* Dkt. No. 18-2 at ¶ 2. Defendant, however, alleges that Ms. Brewer was a guest of the Alderbrook Lodge and that she injured herself at the Alderbrook Lodge. *See* Dkt. No. 14-3 at ¶¶ 2, 7 (citations omitted).

### III. DISCUSSION

**A.    Summary judgment standard**

A court may grant a motion for summary judgment only if the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue

3

warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.     The Policy's exclusions**

In the present matter, the Policy excludes liability coverage for bodily injury or property damage "arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**." *See* Dkt. No. 14-9 at 30. This exclusion, however, does not apply if "the rental or holding for rental of an **insured location** . . . [occurs] on an occasional basis if used only as a residence[.]" *See id.* Defendant asserts that this exclusion excuses them

from indemnifying and defending plaintiffs' in the underlying action brought by Ms. Brewer because plaintiffs' rented the premises at issue more than "on an occasional basis."

Under New York law, insurance policy exclusions are given a "strict and narrow construction," and any ambiguity will be resolved against the insurer if the exclusion provision is found to be ambiguous. *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003) (citation omitted). "Moreover, to 'negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case.'" *Id.* (quoting *Continental Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 652, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993)).

Before a court may resolve any ambiguity in favor of the insured, however, it must first determine whether there is in fact any ambiguity. Whether a provision in an insurance policy is ambiguous is a threshold question of law for the court to determine, *see Duane Reade Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 390 (2d Cir. 2005), and summary judgment is appropriate where the language of the contract is "wholly unambiguous." *Mellon Bank, N.A. v. United Bank Corp.*, 31 F.3d 113, 115 (2d Cir. 1994). "An ambiguity exists where the terms of an insurance contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997)); *see also Nick's Brick Oven Pizza, Inc. v. Excelsior Ins. Co.*, 61 A.D.3d 655, 656 (2d Dep't 2009) (holding that "'[t]he test for ambiguity is whether the language in the insurance contract is "susceptible to two reasonable interpretations"'" (quotations omitted)). Moreover, "[t]he language

of a contract is not made ambiguous simply because the parties urge different interpretations." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992).

In *Villanueva v. Preferred Mutual Insurance Company*, 48 A.D.3d 1015 (3d Dep't 2008), the plaintiffs purchased a summer home in 2002 and, thereafter, "entered into a 'ski season lease' renting the property for the months of November 2004 to April 2005 to two individuals[.]" *Id.* at 1016. In January of 2005, the property was destroyed by fire. *See id.* The plaintiffs homeowners "policy contained a $2,500 limit '[f]or loss to personal property used, in whole or in part, for "business" purposes.'" *Id.* The policy defined "'business' as 'includ[ing] the rental of property to others. It does not include the occasional rental for residential purposes of the part of the "insured premises" normally occupied solely by "your" household.'" *Id.* at 1016-17. The defendant argued that a rental for a period of five consecutive months is not an "occasional" rental within the policy's meaning and, therefore, refused to cover the cost of the loss. *See id.* at 1017.

Disagreeing with the defendant, the court noted that "many of the courts that have interpreted the phrase 'occasional rental' or 'occasional basis' in this context have concluded that the phrase 'refers to rentals occurring now and then, such as vacation rentals.'" *Id.* (quotation and other citations omitted). The court added that "'[t]he purpose behind the "occasional" rental exception was to allow the insured to rent his or her residence while living elsewhere temporarily, but with the intention to return there to live.'" *Id.* (quotation and other citation omitted). Finding that the defendant was required to cover the loss resulting from the fire, the court held that

> [p]laintiffs' one-time rental of their summer home for a five-month period, with no definite plans to continue to rent the home but with the intent to return to use the summer home exclusively themselves, fits comfortably within these alternative definitions. The ski season lease was indisputably a vacation rental and defendant concedes that plaintiff undoubtedly intended to use the house themselves again when it was not rented. Inasmuch as any ambiguity in this regard

6

> must be construed against the insurer and the "average" person
> could reasonably interpret the policy as providing coverage for the
> property despite the temporary vacation rental, Supreme Court
> properly granted plaintiffs' motion for partial summary judgment.

*Id.* at 1017-18 (citation omitted).[3]

In the present matter, the phrase "the rental . . . of an insured location . . . on an occasional basis" is not ambiguous "and its plain and ordinary meaning refers to episodic, non-systematic rentals." *Raner v. Security Mutual Insurance Company*, No. 601409/2009, 2011 WL 903192, *3 (N.Y. Sup. Ct. Feb. 14, 2011) (citing *Seaport Park Condominium*, 39 A.D.3d at 54). Further, the record makes clear that the A-Frame Guest Chalet was only rented on an "occasional" basis. According to plaintiff Edward Gardner's affidavit, plaintiffs "rent 275 Hendricks Road, Alderbrook Lodge and occasionally allow[ ] guests to use 272 Hendricks Road, the 'A' Frame to accommodate an extra guest. From 2004 to 2008 [plaintiffs] have allowed occupancy at the 'A' Frame at 272 Hendricks on only (3) three occasions." *See* Dkt. No. 18-3 at ¶ 7; *see also* Dkt. No. 18-2 at ¶ 9. Plaintiffs' rental of the A-Frame Guest Chalet, on three occasions over a four-year period, which plaintiffs used primarily as their residence when in Bolton Landing, and which they always intended to return to, cannot be said to have been more than "on an occasional basis." Moreover, as the *Villanueva* court held, "[i]nasmuch as any ambiguity in this regard must be

---

[3] Construing a similar provision, the Court of Appeals of Washington has noted that, when interpreting a homeowner's policy,

> [a]n "occasional" rental should be interpreted consistent with the
> purposes of a homeowner's insurance policy, as opposed to a
> landlord's insurance policy. That means that the circumstances of
> the rental must not negate the assumption that the homeowner is
> still the primary resident of the house, despite his or her temporary
> absence.

*State Farm Fire and Cas. Co. v. Piazza*, 131 P.3d 337, 338 (Wash. App. 2006).

construed against the insurer and the 'average' person could reasonably interpret the policy as providing coverage for the property despite the temporary vacation rental," this provision must be construed against defendant. *See Villanueva*, 48 A.D.3d at 1017-18 (citation omitted).

Additionally, contrary to defendant's assertions, the record also makes clear that Ms. Brewer was a guest of the A-Frame Guest Chalet at the time of her accident, not the Alderbrook Lodge. *See* Dkt. No. 19-1 at ¶ 4. It is unclear, however, on which property the injury occurred, *i.e.*, at the Alderbrook Lodge or at the A-Frame Guest Chalet. *See* Dkt. No. 18-3 at ¶ 14; Dkt. No. 14-3 at ¶ 7 (citing Ex. C at ¶ 9).[4] At oral argument, the parties informed the Court that discovery has not yet occurred in the underlying state-court action. Although the state court stayed its proceedings and discovery until this matter could be resolved, discovery in the underlying action is necessary for the Court to dispose of the present action properly. Specifically, Ms. Brewer's deposition is likely necessary for the Court to determine whether her injury occurred at the Alderbrook Lodge or the A-Frame Guest Chalet.

Based on the foregoing, and recognizing "the fact that summary judgment is a 'drastic device,' which should not be granted when there are major factual contentions in dispute," the Court denies defendant's motion for summary judgment with leave to renew after discovery in the

---

[4] Defendant is citing to Ms. Brewer's complaint in the underlying action. Although this complaint seems to support their assertion that the accident took place on the Alderbrook Lodge's property at 275 Hendricks Road, Ms. Brewer fails to distinguish between the Alderbrook Lodge and the A-Frame Guest Chalet in her allegations. *See* Dkt. No. 14-8. In her bill of particulars, however, Ms. Brewer makes clear that she was staying at the A-Frame Guest Chalet, not at the Alderbrook Lodge, when her injury occurred, a fact that is omitted from her complaint. *See* Dkt. No. 19-1 at ¶ 4. Despite this clarification in her bill of particulars, Ms. Brewer then proceeds to refer to the Alderbrook Lodge as if it were one entity and fails to distinguish between the different dwellings. *See id.* at ¶¶ 6-7. As such, the record does not make clear where her injury actually occurred.

underlying state-court action has progressed. *See Higgins v. Monsanto Co.*, 862 F. Supp. 751, 763 (N.D.N.Y. 1994) (citation omitted).

C.  **Rescission** *ab initio*

Defendant asserts that plaintiff Edward Gardner made several misrepresentations in his application for insurance which entitle defendant to a declaration rescinding the policy. *See* Dkt. No. 14-4 at 9-12. Specifically, defendant claims that plaintiff Edward Gardner misrepresented the fact that "(a) the premises was 'rented out occasionally;' (b) the premises was owner-occupied; (c) the property was not situated on more than five acres; and (d) the applicant did not own any recreational vehicles." *See id.* at 9. Plaintiffs assert that they made no misrepresentations justifying rescission. *See* Dkt. No. 18-1 at 5.

Under New York law, an insurer seeking to rescind an insurance policy must demonstrate that the insured "made a material misrepresentation" in seeking coverage. *See Parmar v. Hermitage Ins. Co.*, 21 A.D.3d 538, 540 (2d Dep't 2005) (citations omitted); *see also* N.Y. Ins. L. § 3105(b). By definition, a misrepresentation is a false "statement as to a past or present fact, made to the insurer by [the applicant] . . . as an inducement to the making [of the contract]." N.Y. Ins. L. § 3105(a). A misrepresentation is material if the insurer would have refused to issue that particular insurance policy had it been aware of the facts misrepresented; the insurer need not prove that it would have refused coverage altogether. *See id.* (citations omitted); N.Y. Ins. L. § 3105(b)-(c) (referring to "such" contract rather than to "any" contract); *see also Aetna Cas. & Sur. Co. v. Retail Local 906 of AFL-CIO Welfare Fund*, 921 F. Supp. 122, 131 (E.D.N.Y. 1996) (holding that "the insurer need not prove that it would not have issued any policy at all, but that the policy in question would not have been issued" (citing *Mutual Benefit Life Ins. Co. v. JMR*

9

*Elecs. Corp.*, 848 F.2d 30, 32-34 (2d Cir. 1988)).  However, a party may not rely on conclusory allegations by insurance company employees to establish materiality as a matter of law; rather, "the insurer must present documentation concerning its underwriting practices, such as underwriting manuals, bulletins, or rules pertaining to similar risks, which show that it would not have issued the same policy if the correct information had been disclosed in the application." *Parmar*, 21 A.D.3d at 540 (citations omitted).  Rescission of an insurance policy renders the policy "void *ab initio*." *Stein v. Sec. Mut. Ins. Co.*, 38 A.D.3d 977, 978 (3d Dep't 2007) (citations omitted); see also Retail Local 906, 921 F. Supp. at 131 (holding that, "[u]nder New York law, 'an insurance policy issued in reliance on material misrepresentations is void from its inception'" (quoting *Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan*, 77 F.3d 48, 52 (2d Cir. 1996)).

  Again, the lack of discovery in the present matter precludes the Court from granting defendant's motion for summary judgment at this time.  The defendant's submissions implied that one policy covered liability for both properties, but did not entirely make clear why two different policies were issued with respect to the property.  Moreover, the parties indicated at oral argument that plaintiffs filed a second state-court action against the insurance agent who sold them the Policy at issue.  Discovery in that matter will likely provide more insight regarding the extent of the conversations between the agent and the underwriter regarding the appropriateness of the Policy when it was issued.  Finally, it is unclear whether defendant continued to accept premiums from plaintiffs after learning of the facts it claims justify rescission, or if it cancelled the Policy and thereby potentially waived its right to rescind.  *See Fidelity & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp.*, No. CV 01-8434, 2009 WL 590710, *2-*3 (E.D.N.Y. Mar. 3, 2009) (citations omitted).

Based on the foregoing, the Court denies defendant's motion for summary judgment with leave to renew after discovery in the underlying state-court action has progressed. *See Higgins*, 862 F. Supp. at 763 (citation omitted).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that defendant's motion for summary judgment is **DENIED** with leave to renew in accordance with the terms of this Memorandum-Decision and Order; and the Court further

**ORDERS** that plaintiffs shall file status reports with the Court every **FORTY-FIVE (45) DAYS.**

**IT IS SO ORDERED.**

Dated: June 29, 2011
       Albany, New York

_\[signature\]_
Mae A. D'Agostino
U.S. District Judge